UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

JODI E. SILBERMAN,

        Appellant,

      v.

DEPARTMENT OF LABOR,

        Agency.

DOCKET NUMBER
CH-0752-09-0322-B-1

DATE: September 4, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Rebecca L. Salawdeh, Esquire, Wauwatosa, Wisconsin, for the appellant.

Edward V. Hartman, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1     The appellant has filed a petition for review of the remand addendum initial decision, which denied her request for attorney fees for work performed in 2008, 2009, and 2011. For the reasons discussed below, we GRANT the appellant's petition for review. We AFFIRM the administrative judge's findings regarding

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the attorney's claimed hours in 2011.  However, we VACATE the administrative judge's finding that the appellant was not entitled to an award of attorney fees for work performed during the 2008-09 time frame, and we award the appellant $1,875.00 in fees.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        After a prior suspension appeal was reversed on due process grounds, the administrative judge issued an addendum initial decision that awarded the appellant $4,437.50 in attorney fees and denied her request for costs.  MSPB Docket No. CH-0752-09-0322-A-1 (A-1), Addendum Initial Decision (Jan. 6, 2012); *see Silberman v. Department of Labor*, 116 M.S.P.R. 501 (2011) (prior suspension appeal).  After the appellant and the agency filed a petition for review and a cross petition for review, respectively, the Board issued a nonprecedential remand order that vacated the initial decision in part and remanded the case to the regional office for further adjudication.  MSPB Docket No. CH-0752-09-0322-A-1, Remand Order (Apr. 18, 2013).  In its order, the Board found that the appellant established gross procedural error and was entitled to an award of attorney fees.  Remand Order at 3-4.  The Board further found that the $250 hourly rate sought by the appellant's attorney was the prevailing community rate for an attorney with his experience in the Chicago area.  Remand Order at 2 n.3.  The Board determined, however, that the administrative judge's decision essentially to disregard the appellant's fee petition and supporting documentation—and instead to conduct his own assessment of the work performed by the attorney on the appellant's behalf based on the documentation in the record—was improper.  Remand Order at 4-5.  The Board therefore remanded the appeal for proper adjudication of the reasonableness of the appellant's claimed fees and it directed the administrative judge to focus on the hours claimed in the fee petition.  Remand Order at 5-6.  The Board also affirmed the administrative judge's decision to deny the appellant costs.  Remand Order at 2 n.3.

¶3 On remand, the administrative judge issued a remand addendum initial decision (RAID) that denied the appellant's request for attorney fees. MSPB Docket No. CH-0752-09-0322-B-1 (B-1), Initial Appeal File (IAF), Tab 4, Remand Addendum Initial Decision (RAID). The administrative judge denied the appellant's request for fees allegedly incurred in 2008 and 2009 because neither the appellant nor her attorney complied with the "minimum" requirement to provide "accurate and current time records" for the claimed work, notwithstanding repeated orders notifying them of this requirement. RAID at 2-4. Regarding the 3 hours claimed on October 3, 2011, for "review of billing," the administrative judge denied this request because it constituted a "gross padding of the fee request." RAID at 4. Regarding the 3 hours claimed on December 1, 2011, the administrative judge described this work as the attorney's "attempt to retroactively catalogue the nature of the work performed for the money he previously received," he found that the resulting "billing statement" was not current nor did the attorney include an affidavit justifying the reasonableness of the claimed fees, and he denied this request. RAID at 4.

¶4 The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1. On review, the appellant asserts that the administrative judge committed several errors in his analysis and contends that the claimed fees award in the amount of $10,750 is reasonable and in the interest of justice. *Id.* The agency did not file a response to the appellant's petition for review.

Legal Standard

¶5 As the Board noted in its prior order, the computation of a reasonable attorney fee award begins with an analysis of two objective variables: the lawyer's customary billing rate and the number of hours reasonably devoted to the case. *See* B-1, IAF, Tab 1 at 4 (citing *Mitchell v. Department of Health & Human Services*, 19 M.S.P.R. 206, 208 (1984)). Because the Board already determined that the $250.00 hourly rate claimed by the appellant's attorney was

appropriate, the only question before the Board is the number of hours reasonably devoted to the case. The appellant, as the moving party, bears the burden of proof in this regard. *Ruble v. Office of Personnel Management*, 96 M.S.P.R. 44, ¶ 7 (2004).

¶6        Under the Board's regulations, an attorney fees motion must be supported, at a minimum, by accurate and current time records. 5 C.F.R.§ 1201.203(a). The purpose of requiring accurate and current time records is to allow the Board to determine how much time an attorney spent working on the case. *See generally Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 10 (2011). The Board has held that an administrative judge need not automatically accept claimed hours, he may disallow hours for duplication, padding, or frivolous claims, he may impose fair standards of efficiency and economy of time, and he may cut hours when there is simply not enough evidence to show that the request is reasonable. *Id.*, ¶ 11; *Casali v. Department of the Treasury*, 81 M.S.P.R. 347, ¶ 14 (1999); *see Foley v. U.S. Postal Service*, 59 M.S.P.R. 413, 423 (1993); *Rose v. Department of the Navy*, 47 M.S.P.R. 5, 13 (1991); *Kling v. Department of Justice*, 2 M.S.P.R. 464, 472-73 (1980); *see also Gubino v. Department of Transportation*, 85 M.S.P.R. 518, ¶ 7 (2000) (noting that the administrative judge must carefully scrutinize the hours and billing rating claimed).

We award $1,875 in attorney fees.

¶7        In support of the fee petition, the appellant submitted a worksheet purporting to show the dates and amounts of money paid to her attorney, copies of checks that she sent to her attorney for "legal fees," and evidence that the checks were processed. *See* A-1, IAF, Tab 3, "List of Expenses" and "Attorney's Fees" Tab. She also included an October 3, 2011 one-paragraph letter from her attorney describing in general terms his work on her behalf, a corresponding bill for 3 hours of work, and supporting documentation regarding the proposed

suspension. *See* A-1, IAF, Tab 5 at 7-8, Exhibits.[2] Finally, the appellant included a "Billing Statement for [the appellant]/Record of Payments From--2008-2011." A-1, IAF, Tab 7, Blue Tab.

¶8      The administrative judge provided specific reasons for disallowing the claimed hours in October 2011 and December 2011, and we affirm his decision in this regard. *See Crumbaker v. Merit Systems Protection Board*, 781 F.2d 191, 195 (Fed. Cir. 1986), *modified*, 827 F.2d 761 (Fed. Cir. 1987).

¶9      The appellant correctly notes that the Board has held that, before it "employs the extreme sanction of denial of attorney fees in a case where they are warranted in the interest of justice, there should be something in the record suggesting that the hourly rate is unreasonable or that the hours claimed are excessive," and the fee petition should be subject to disallowances. PFR File, Tab 1 at 2 (citing *Johnson v. Internal Revenue Service*, 24 M.S.P.R. 202, 203-04 (1984)). Although we share the administrative judge's concerns about the deficiencies in the fee petition, *see infra* ¶¶ 10-23, we vacate the administrative judge's analysis of the claimed hours in 2008-09 because his categorical denial of these claimed hours is not consistent with Board precedent.

¶10     We have considered each of the 2008-09 line items in the Billing Statement, and find that significant disallowances are warranted. It is apparent from these submissions that the appellant's attorney did not contemporaneously itemize any work performed or services provided on the appellant's behalf in the suspension matter. Rather, the Billing Statement, which was created in December 2011, well over 2 years after the appellant indicated to the administrative judge that the attorney was no longer her representative in the suspension appeal, *see* MSPB Docket No. CH-0752-09-0322-I-2 (I-2), IAF, Tab 32, appears to be a

---

[2] Some of this documentation only identifies the Equal Employment Opportunity Commission (EEOC) case number. *See, e.g.*, *id.*, Exhibit G.

retrospective reconstruction of services allegedly provided to the appellant during the 2008-09 time frame.[3]

¶11     The Board has held that the absence of contemporaneous time records is normally an insufficient basis, by itself, upon which to deny a fee award altogether, although it may prompt a reviewing court to scrutinize reconstructed records with care and to reduce the hours claimed if there is uncertainty as to their accuracy. *Wilson v. Department of Transportation*, 22 M.S.P.R. 435, 437 (1984). In *Wilson*, the Board noted that there were deficiencies in the fee petition, but concluded that the attorney's affidavit, which averred that the "hourly computations were arrived at by a complete review and analysis of the file including pleadings, copies of outgoing and incoming correspondence, notations taken during office conferences, exhibits, notations taken during telephone conversations, and other records," was sufficient to justify the claimed fees. *Id*. at 437-38. This matter is easily distinguishable from *Wilson*. Here, the administrative judge requested an affidavit from the appellant or her attorney regarding the reasonableness of the fees, A-1, IAF, Tab 2 at 1-2,[4] and subsequently informed the appellant that her attorney needed to provide a more detailed accounting of his work in furtherance of the Board appeal, including an itemized billing history, A-1, IAF, Tab 6. The attorney did not provide either an affidavit or a narrative describing his efforts to reconstruct his work during the 2008-09 time frame or to otherwise provide context for his claimed hours.

¶12     We have other concerns about the accuracy of the hours claimed in 2008-09 in the Billing Statement. For instance, the dates identified in the Billing Statement were based on the attorney's *receipt* of the appellant's payments, not

---

[3] Notably, the Billing Statement does not show hours worked by the attorney but only payments received. In light of our finding that the attorney's $250 hourly rate was reasonable, we will assume that a payment of $250 corresponds to 1 hour of work.

[4] The appellant is mistaken in her assertion on review that the administrative judge never required the attorney to submit an affidavit justifying the reasonableness of the fees. PFR File, Tab 1 at 5.

for the most part on any dates on which work on the appellant's behalf actually occurred. Additionally, the appellant admitted that her attorney also represented her in an EEOC matter and an arbitration matter during this same general time frame, and it is not clear how the attorney was able to distinguish work in these various matters, particularly since the appellant's checks only contained the description "legal fees." *See* A-1, IAF, Tab 7 at 4; *see also* A-1, IAF, Tab 3, "Attorney's Fees" Tab (copies of checks). Finally, the descriptions in the Billing Statement of alleged work performed—for the most part—are lacking in specificity and context. For instance, most of the claimed hours in the 2008-09 time frame purport to document payments received for general tasks such as phone calls, meetings, settlement discussion(s), writing letters, reviewing documents, and "work" on various tasks. *See, e.g.*, A-1, IAF, Tab 7, Blue Tab at 3 (on March 31, 2008, the attorney "received $250 payment . . . for reviewing documents, phone calls and meeting regarding proposed 30 day suspension"), 4 (on June 17, 2008, the attorney "received $1,000 payment . . . for phone calls, meetings and follow-up meetings regarding the proposed 30-day suspension"). As noted above, there is no indication in the Billing Statement or elsewhere of the dates on which most of this alleged work occurred, what documents were reviewed, to whom the phone calls were made, who was present for the phone calls, the nature of the phone calls, the reason for any alleged meeting(s) or follow-up meeting(s), the attendees at any such meetings, or the apportionment of time for or between these various tasks, among other things. Because the lack of detail and contextual information calls into question the accuracy of the claimed hours, particularly given the nearly 2-year lapse between when the work allegedly occurred and the creation of the Billing Statement, we find that the line items in the Billing Statement that identify such general tasks do not meet the requirement of 5 C.F.R. § 1201.203(a), and we do not award any fees for such work.

¶13    There are, however, some discrete tasks identified in the Billing Statement that we can evaluate, such as the Stay Request, the filing of the initial appeal

paperwork regarding the suspension, preparation for and appearance at the appellant's deposition, and specific correspondence. For instance, we do not award any fees for the attorney's work on the appellant's Stay Request. *See* A-1, IAF, Tab 7, Blue Tab at 1-2 (noting a January 26, 2009 receipt of $500 for "phone calls, meeting and preparing filing with MSPB," which appears to refer to the Stay Request, and a February 13, 2009 receipt of $250 for work on filing Board appeal and additional work on the Stay Request); *see also* MSPB Docket No. CH-0752-09-0322-S-1 (S-1), Stay Order (Feb. 10, 2009). The appeal challenging the appellant's suspension and the Stay Request are two separate actions, and the reversal of the appellant's suspension was in no way attributable to any claim of reprisal for whistleblowing activity. Moreover, it appears that the appellant was responsible for drafting and filing the Stay Request, as only her signature appeared on the Stay Request and the Certificate of Service, and she referred to herself as "I" throughout the Stay Request. *See* S-1, Tab 1. We disagree with the appellant's contention on review that the administrative judge was "required" to award fees for unsuccessful arguments, including her unsuccessful Stay Request. PFR File, Tab 1 at 5; *see Rothschild v. Department of Housing & Urban Development*, 54 M.S.P.R. 238, 242-43 (1992) (awarding fees for the work on the mandamus order but declining to award fees for the attorney's work on the stay request).

¶14 We similarly do not award any fees for the claimed hours for filing the initial appeal in the suspension matter, A-1, IAF, Tab 7, Blue Tab at 1-2 (discussing January 27, 2009 and February 13, 2009 payments received), because the appellant, and not the attorney, filed the initial appeal in that matter, *see* MSPB Docket No. CH-0752-09-0322-I-1 (I-1), IAF, Tab 1.

¶15 Regarding a September 13, 2009 receipt of $250 for "September 1, 2009 . . . pre-hearing conference and work on pre-hearing submissions," the record reflects that the appellant, not her attorney, filed her prehearing submissions, *see* I-2, IAF, Tab 11. We do not award fees for such work. The administrative judge

noted in an order in the fee appeal that the attorney "claims he represented the appellant during the prehearing conference, [but] he did not raise a single argument on her behalf or otherwise make any substantive comment during the conference," and the administrative judge remarked that the attorney "apparently listened to the appellant while she argued her case." A-1, IAF, Tab 6 at 3 n.1. Although it is unclear from these statements whether the attorney even made his presence known to the administrative judge during the prehearing conference, we award $250 for his appearance at the prehearing conference.

¶16    The Billing Statement attributes $750 total for the attorney's representation at the July 10, 2009 deposition and $650 total for preparation for the July 10, 2009 "hearing," which we assume is a reference to the deposition that occurred on that date. *See* A-1, IAF, Tab 7, Blue Tab at 2 (discussing payments received on June 12, 2009, June 29, 2009, July 27, 2009, and August 24, 2009). The record reflects that the appellant was deposed on July 10, 2009, the attorney appeared on her behalf, and the deposition started at 12:30 p.m. and ended at 3:07 p.m. due to a family emergency involving the agency representative. *See* I-2, IAF, Tab 17, Exhibit 16. We therefore grant the request for $750 in fees for the attorney's appearance at the deposition. We deny the request for $650 for "preparation" for the deposition because the attorney does not explain what "preparation" means in this context, particularly since he was defending the appellant in her deposition.

¶17    Several of the line items in the Billing Statement predate the February 1, 2009 effective date of the suspension at issue. *See* A-1, IAF, Tab 7, Blue Tab; *see also* I-1, IAF, Tab 1, Decision Tab. The Board has held that recovery of fees before the effective date of the agency action is proper. *Brown v. U.S. Coast Guard*, 28 M.S.P.R. 539, 544-52 (1985).

¶18    Regarding an April 22, 2008 receipt of $250 for "meeting and writing April 11, 2008 letter to Regional Director Sandra Scott Zeigler regarding proposed 30-day suspension," A-1, IAF, Tab 7, Blue Tab at 3, the record reflects

that the attorney sent a two-page single spaced letter to Ms. Ziegler, *see id.*, Green Tab at 22-24. We grant fees in the amount of $250 for this task.

¶19 Regarding an April 25, 2008 receipt of $250 for "phone calls and meeting, writing and sending the April 25, 2008 letter to Regional Director Sandra Scott Ziegler regarding proposed 30-day suspension," *id.*, Blue Tab at 3, the record reflects that the attorney sent a four-paragraph letter to Ms. Ziegler on this date, *see id.*, Green Tab at 26. Given the brevity of the letter, we award $125 for this work.

¶20 The Billing Statement states that, on May 9, 2008, payment for an undisclosed amount was received for "assistance with May 2, 2008 letter to Regional Director Sandra [Scott] Ziegler regarding proposed 30-day suspension." *See id.*, Blue Tab at 3. We view the absence of any information in the Billing Statement regarding how much time the attorney allegedly spent on this task as an oversight because a nearly two-page, single-spaced May 2, 2008 letter to Ms. Ziegler is in the record at *id.*, Green Tab at 35-37. We award $250 for this work.

¶21 Regarding a May 9, 2008 receipt of $500 for "assistance with May 9, 2008 letter to Regional Director Sandra Scott Ziegler," *id.*, Blue Tab at 3, the record reflects that the appellant wrote this letter, *see id.*, Green Tab at 40-46. We do not award fees for this work because it is unclear what "assistance" means in this context and the attorney did not explain when or in what manner such "assistance" was provided.

¶22 Regarding a May 21, 2008 receipt of $250 for "assistance with May 15, [2008] letter to Regional Director Sandra Scott Ziegler regarding proposed 30-day suspension," *id.*, Blue Tab at 4, the record reflects that the appellant wrote this letter, *see id.*, Green Tab at 47-49. We do not award fees for this "assistance" for the reasons discussed above.

¶23 Regarding a June 6, 2008 receipt of $750 for "representation at oral reply and assistance on June 6, 2008 letter to Regional Director Sandra Scott Ziegler regarding proposed 30-day suspension," *id.*, Blue Tab at 4, the record reflects that

the attorney did represent the appellant at the May 13, 2008 oral reply but the appellant wrote the June 6, 2008 letter, which responded to the summary of the oral reply, *see id.*, Green Tab at 50-53 (summary of oral reply), 54-55 (the appellant's response).  The summary states that the oral reply started at 3:00 p.m. *See id.* at 51-53.  In the absence of any specific information regarding how long the oral reply lasted, we award the attorney $250 for this work.  We do not award fees for "assistance" with the June 6, 2008 letter for the reasons discussed above.

¶24    We have considered the appellant's remaining arguments on review, but none warrant a different outcome.

**ORDER**

¶25    We ORDER the agency to pay the attorney of record $1,875.00 in attorney fees. The agency must complete this action no later than 20 days after the date of this decision.  *See generally* Title 5 of the United States Code, section 1204(a)(2) (5 U.S.C. § 1204(a)(2)).

¶26    We also ORDER the agency to tell the appellant and the attorney promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. We ORDER the appellant and the attorney to provide all necessary information that the agency requests to help carry out the Board's Order. The appellant and the attorney, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶27    No later than 30 days after the agency tells the appellant or the attorney that it has fully carried out the Board's Order, the appellant or the attorney may file a petition for enforcement with the office that issued the initial decision on this appeal, if the appellant or the attorney believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant or the attorney believes the agency has not fully carried out the Board's

Order, and should include the dates and results of any communications with the agency. *See* 5 C.F.R. § 1201.182(a).

¶28    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:               _____
                                           William D. Spencer
                                           Clerk of the Board

Washington, D.C.